IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Whittaker, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>All Reverse Mortgage, Inc., a California corporation,<br><br>　　　　　　　Defendant. | Case No. 3:20-cv-08016-DLR<br><br>**JOINT STATUS REPORT**<br><br>Hon. Douglas L. Rayes |

Pursuant to the Court's May 29, 2020 Order (Dkt. 23), Plaintiff Brenda Whittaker ("Plaintiff" or "Whittaker") and Defendant All Reverse Mortgage, Inc. ("Defendant" or "ARM") jointly submit this status report and state as follows:

Defendant's Position

On July 6, 2020, the Supreme Court decided *Barr v. American Association of Political Consultants* ("*AAPC*"), which served as the basis for ARM's requested stay. *See* ---- S.Ct. ----, 2020 WL 3633780 (2020) (attached as Ex. A). ARM respectfully requests the Court continue the stay of this case for the following reasons.

With respect to *AAPC*, though the Supreme Court saved the TCPA by severing the unconstitutional government debt exception, a majority of Justices held that the ATDS[1] restriction was unconstitutional while it contained the government debt exception (*i.e.*, pre-severance), as ARM predicted. *See AAPC*, 2020 WL 3633780, at *5 ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based. The answer is yes."). Because the calls at issue in this case occurred during that period, ARM cannot be held liable for those calls in this case. *See, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (defendant cannot be held liable under an unconstitutional law regardless of how a legislature "might subsequently cure the [constitutional] infirmity"). If the rule were otherwise, the political party in power could pass similar unconstitutional exceptions to punish their opponents, knowing it could only be penalized on a prospective basis once a challenge reaches the Supreme Court.

Contrary to Plaintiff's assertion below, footnote 12 of the plurality *AAPC* opinion does not change this result. *AAPC*, 2020 WL 3633780, at *13 n.12. Justice Kavanaugh's passing statement—which was only adopted by two other Justices, in any event—suggests that prior **adjudications** of liability would not undone by the

---

[1] ATDS means an "automatic telephone dialing system."

Joint Status Report
-1-

decision. *Id.* To interpret the footnote otherwise not only ignores that the government debt exception rendered the TCPA unconstitutional, but also cuts against the reasoning of the Supreme Court's other recent severance opinion decided just days before *AAPC*, as well as prior Supreme Court precedent. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, --- S. Ct. ----, 2020 WL 3492641, at *18, n.12 (2020) (applying severance remedy and indicating that pre-severance decisions made by the CFPB director under an unconstitutional scheme may not be enforceable absent ratification); *see also, e.g.*, *Morales-Santana*, 137 S. Ct. at 1699 n.24.

However, this Court need not decide this weighty constitutional issue—which was not resolved by the Supreme Court's plurality opinion in *AAPC*—because, yesterday, the Supreme Court granted certiorari in another TCPA appeal, this one from the Ninth Circuit: *Facebook, Inc. v. Duguid*, No. 19-511 (Jan. 9, 2020) ("*Facebook*"). *See* Comp. Ex. B. In that case, the Supreme Court will finally resolve "whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e]' a random or sequential number generator.'" *See id.*; *see also* Dkt. 19 at 5 (noting Plaintiff's entire case turns whether ARM used an ATDS). As Plaintiff recognizes below by conceding the *Facebook* decision would move certain dialing systems "outside the scope of the ATDS restriction," if the Court reverses the Ninth Circuit and follows the Seventh and Eleventh Circuits in holding that an ATDS must employ a "random or sequential number generator," Plaintiff's case will end. In other words, Plaintiff only asserts an ATDS claim and the calling system at issue[2] did not employ

---

[2] Should the Court permit additional briefing, CallTrackingMetrics ("CTM") (who provided the platform that made the calls at issue) would provide a declaration to this effect. *See* Doc. 23 at 2.

a random or sequential number generator.[3]  Further, as the Court noted in granting ARM's initial stay request, litigating a nationwide class action would significantly prejudice ARM—a small, family business stressed by the pandemic—but would pose no harm to Plaintiff.  *See* Dkt. 23 at 2.  Plaintiff has already received confirmation that records are being preserved, seeks only statutory money damages, and has not received allegedly violative communications for eight (8) months.  *Id.*  As such, Plaintiff's assertion that ARM is contributing to the "millions" of robocalls is baseless and false.[4]  Thus, the Court should continue the stay of this case so the Parties (and the Court) do not expend significant resources litigating a nationwide class action based on the potentially wrong definition of ATDS.

Accordingly, ARM respectfully requests that the Court continue the stay of this case or, if there is any question about the propriety of a continued stay, permit the Parties to submit additional briefing (which Plaintiff does not oppose) on *Facebook*'s potentially dispositive impact before ruling on the same.

Plaintiff's Position

Defendant misunderstands the *AAPC* decision. The Supreme Court held that

---

[3] ARM also denies liability under the Ninth Circuit's interpretation of ATDS, but that question would be far easier resolved if the Supreme Court adopts the Seventh and Eleventh Circuit's interpretation since CTM's calling platform <u>categorically</u> lacks the capacity to dial numbers randomly or sequentially.  *Compare Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018), *with Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020), and *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020).

[4] Adhering to the statutory definition of ATDS would simply narrow the reach of TCPA to exclude devices that Congress never intended to regulate in the first place, such as cellphones, which is why several circuit courts have adopted that approach. *See* Ex. B, Suppl. Brief. at 6.  And more, regardless of what the Supreme Court does in *Facebook*, the TCPA would still regulate pre-recorded calls and calls to numbers of the Federal Do-Not-Call Registry, neither of which are at issue in this case.

the government debt exception was unconstitutional, not the broader ATDS restriction. *Barr v. Am. Ass'n of Political Consultants, Inc*, No. 19-631, 2020 WL 3633780, at *14 (U.S. July 6, 2020) ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law. We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute."); *Id.* at *11 ("With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law. Indeed, the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015."); *Id.* at *2 ("seven Members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute.").

As the Supreme Court observed, "the tail (one unconstitutional provision) does not wag the dog (the rest of the codified statute or the Act as passed by Congress). Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *AAPC*, 2020 WL 3633790, at *9. Indeed, under Defendant's interpretation the entire Bipartisan Budget Act of 2015 is unenforceable. "If courts had broad license to invalidate more than just the offending provision, a reviewing court would have to consider what other provisions to invalidate: the whole section, the chapter, the statute, the public law, or something else altogether. Courts would be largely at sea in making that determination, and usually could not do it in a principled way. Here, for example, would a court invalidate all or part of the Bipartisan Budget Act of 2015 rather than all or part of the 1991 TCPA? After all, that 2015 Bipartisan Budget Act, not the 1991 TCPA, added the constitutionally problematic government-

Joint Status Report
-4-

debt exception. That is the kind of free-wheeling policy question that the Court's presumption of severability avoids."). *Id.*

Moreover, Justice Kavanaugh's opinion specifically rejected the sort of retroactivity argument Defendant makes. "As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. See Reply Brief 24. **On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.**" *AAPC*, 2020 WL 3633780, at *13 n.12. (emphasis added.)

As for Defendant's request for an additional stay pending *Facebook*, such a stay would be unfairly prejudicial to Plaintiff. This case was filed on January 16, 2020. It was already stayed once pending the *AAPC* decision, and now Defendant seeks a second lengthy stay. The *Facebook* case is set for the October 2020 Term, which won't end until June 2021. Thus, staying the case pending the Supreme Court's ruling in *Facebook* could mean that the case will be a year-and-a-half old before a Rule 16 Conference is even held.

Moreover, though it is difficult to predict what the Supreme Court will do in the *Facebook* case, the *AAPC* decision stated "[t]he continuing robocall restriction proscribes *tens of millions* of would-be robocalls that would otherwise occur *every day*. Congress's continuing broad prohibition of robocalls amply demonstrates Congress's continuing interest in consumer privacy." *AAPC*, 2020 WL 3633780, at *7. Thus, it is difficult to imagine that the Supreme Court will turn around in the very next term, reject the Ninth Circuit's ATDS analysis, and reach a conclusion that guts

Joint Status Report
-5-

the ATDS restriction by narrowing the ATDS definition and moving virtually all modern dialing systems outside the scope of the ATDS restriction.

And at any rate, Defendant will still be required to respond to discovery regarding its dialing equipment regardless of the outcome in *Facebook*. That is, even if the definition of an ATDS is somehow changed, there will still be a factual dispute regarding whether Defendant's equipment satisfies the hypothetical new definition. Thus, regardless of whether *Facebook* changes the standard for what constitutes an ATDS, Defendant will still need to produce discovery regarding its equipment.

Plaintiff does not oppose Defendant's request for a briefing schedule related to its request for an additional stay.

Respectfully Submitted,

**BRENDA WHITTAKER**, individually and on behalf of all others similarly situated,

Dated: July 10, 2020

By: /s/ Patrick H. Peluso
  One of Plaintiff's Attorneys

Penny L. Koepke
pkoepke@hoalaw.biz
Maxwell & Morgan, P.C.
4584 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Telephone (480) 833-1001

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210

Telephone: (720) 213-0676
Facsimile: (303) 927-0809
*Pro Hac Vice*

Counsel for Plaintiff

and

By:   /s/Ryan D. Watstein

Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
171 17th St. NW, Ste. 1550
Atlanta, GA 30363
Telephone: (404) 400-7307
Facsimile: (404) 400-7333

Counsel for Defendant

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on July 10, 2020.

/s/ Patrick H. Peluso