Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Matthew A. Keilson (*pro hac vice*)
mkeilson@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
171 17th Street, Suite 1550
Atlanta, Georgia 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

*Counsel for Defendant*
*All Reverse Mortgage, Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
### (Prescott Division)

| | |
|---|---|
| Brenda Whittaker, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>All Reverse Mortgage, Inc.,<br><br>        Defendant. | Case No: 3:20-cv-08016-DLR<br><br>**DEFENDANT ALL REVERSE MORTGAGE, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hon. Douglas L. Rayes<br><br>Complaint filed: January 16, 2020<br>FAC filed: March 3, 2020 |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant All Reverse Mortgage, Inc. ("ARM") hereby moves this Court, pursuant to Federal Rules of Civil Procedure, Rule 12(c), for an order granting judgment on the pleadings because the Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims, given the Supreme Court's decision in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020).  This Motion is made on the grounds that Plaintiff's lawsuit— that ARM violated the Telephone Consumer Protection Act's ("TCPA") automated-call ban by allegedly placing communications with an automatic telephone dialing system ("ATDS")—is based on a statutory provision that was unconstitutional under the First Amendment at the time the purportedly violative communications took place.  This is the conclusion reached by the only two courts in the country that have addressed this question.

This Motion is based upon the Memorandum of Points and Authorities attached hereto, the exhibits in support of same, the complete file and record in this action, and such further and other matters as the Court may allow.

KABAT CHAPMAN & OZMER LLP

DATED:  November 3, 2020                    By: /s/ *Ryan D. Watstein*

Ryan D. Watstein

*Counsel for Defendant*

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................1

II.  RELEVANT FACTS ...........................................................................3

III.  RELEVANT LAW .............................................................................3

    A.  Standard for Motion for Judgment on the Pleadings. .................3

    B.  The Supreme Court's Holding in *AAPC*. ...................................4

IV.  RELEVANT LAW .............................................................................5

    A.  *AAPC* Deprives the Court of Subject Matter Jurisdiction over
        Plaintiff's ATDS Claim, Which Is Premised on Calls Before
        July 6, 2020, Because the Violation of an Unconstitutional
        Law Is Not a Justiciable Question. ...............................................5

    B.  The Three-Justice Dicta in Footnote 12 of the *AAPC* Decision
        Does Not Warrant a Different Result. .......................................10

    C.  The Supreme Court's Recent Opinion in *Seila Law* Supports
        Dismissal. ..................................................................................13

V.  CONCLUSION.................................................................................15

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   <u>INTRODUCTION</u>

"An act of congress repugnant to the constitution cannot become a law." *Marbury v. Madison*, 5 U.S. 137, 138 (1803).  In this Telephone Consumer Protection Act ("TCPA") class action, Brenda Whittaker ("Plaintiff") asks the Court to cast aside this bedrock constitutional principle in seeking damages against ARM for allegedly violating the TCPA's "automated-call ban"—a ban that the Supreme Court held was unconstitutional in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (hereinafter, "*AAPC*").[1]  Specifically, the Supreme Court held that the TCPA's automated-call ban, upon which Plaintiff's claims are entirely based, was an unconstitutional content-based restriction when combined with the government debt exception—a carveout that allowed only government-favored speakers to violate the restriction.  In other words, the automated-call ban has been unconstitutional, and thus entirely unenforceable, from the enactment of the government debt exception in 2015 until the Court severed it in *AAPC*.

And while the Supreme Court cured the constitutional infirmity by severing the carve-out such that the automated-call ban can now be enforced *prospectively*, that does not change the impact of the ruling in this case: that ARM, consistent with over two hundred years of constitutional jurisprudence and binding precedent, could not have violated a statutory provision that contained an unconstitutional content-based restriction at the time of the alleged violations.  This is the *exact* conclusion reached recently by the only two courts to have considered this issue: *Creasy v. Charter Comms., Inc.*, --- F.3d --, No. 2:20-CV-01199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), and *Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020).  In *Creasy* and *Lindenbaum*, the courts held that the Supreme Court's decision in *AAPC* deprives the

---

[1] Because the Supreme Court decided the constitutional challenge to the automated-call ban in *AAPC*, Federal Rule of Civil Procedure 5.1 does not apply to the instant filing and a notice of constitutional challenge is not required.  *See* Fed. R. Civ. P. 5.1.  If the Court determines otherwise, ARM will promptly file such a notice.

federal courts of subject matter jurisdiction over alleged violations of the automated-call ban that took place during the time it contained the government-debt exception, just as ARM argues here. *Creasy*, 2020 WL 5761117 at *6; *Lindenbaum*, 2020 WL 6361915 *7. This is because, as both courts explained, enforcing the automated-call ban during the period it was unconstitutional would endorse the same kind of content-based discrimination the Supreme Court in *AAPC* tried to eliminate. *See Lindenbaum*, 2020 WL 6361915 *7("[A]t the time defendants engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction."); *Creasy*, 2020 WL 5761117 at *5 ("[T]he entirety of the pre-severance [automated-call ban] is void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*.") (emphasis in original).  As a result, the courts dismissed all claims arising out of that provision that occurred before July 6, 2020.

That result is "constitutionally dictated," as Judge Feldman phrased it in *Creasy*, and an example underscores why.  *Creasy*, 2020 WL 5761117 at *6.  If, instead of government debt collectors, Congress passed a carve-out for the Donald Trump campaign that was later held to be unconstitutional, the disfavored speakers (any other speaker, including an opposing campaign) could not then be punished for making calls during the period of time for which the Trump campaign was given a free pass.  That is to say, the disfavored speakers could not be punished for violating a flagrantly unconstitutional speech restriction.  The same exact result—as confirmed by *Creasy* and *Lindenbaum*—follows here: ARM cannot be penalized for allegedly violating the automated-call ban that was held unconstitutional by the Supreme Court for the period of time the favored speakers were given a free pass.  Thus, as in *Creasy* and *Lindenbaum*, Plaintiff's class action lawsuit—which is entirely premised on purported violations that occurred before July 6, 2020 (the date of the *AAPC* decision)—is barred and must be dismissed.

-2-

## II.    RELEVANT FACTS

On January 16, 2020, Plaintiff filed this putative class action alleging that she received an unsolicited telephone call and text message from ARM to her cellular phone in August and October 2019.  Docket No. ("Doc.") 1; *see also* Doc. 13 at ¶¶ 11–18.  As a result of these purported contacts, Plaintiff alleges two violations of the TCPA, both premised entirely on alleged violations of the TCPA's automated-call ban.  Doc. 13 at ¶¶ 32-48.

Plaintiff also asks the Court to certify two nationwide TCPA classes, one based on purportedly autodialed calls and the other on text messages.  *Id.* at ¶¶ 24–25.  Plaintiff defines her putative classes to date back to 2016, shortly after Congress added the government debt exception to the automated-call ban.  Doc. 14 at ¶¶ 24–25; *supra* III.B.

## III.    RELEVANT LAW

### A. Standard for Motion for Judgment on the Pleadings.

A Rule 12(c) motion for judgment on the pleadings specifically challenges the sufficiency of the complaint after an answer has been filed.  *See* Fed. R. Civ. P. 12(c).  "'If a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1).'"  *San Luis Food Producers v. United States*, 772 F. Supp. 2d 1210, 1218 (E.D. Cal. Feb. 16, 2011) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004)).  The burden of establishing the appropriateness of a court's exercise of jurisdiction lies with the party asserting it, and courts are presumed to lack jurisdiction "'unless the contrary affirmatively appears.'"  *See Hornsby v. Lufthanasa German Airlines*, 593 F. Supp. 2d 1132, 1135 (C.D. Cal. 2009) (quoting *Stock West, Inc. v. Confederated Tribes of the Colville* Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989)).

The Constitution also limits the federal judicial power to designated "cases" and "controversies."  U.S. Const., Art. III, § 2; *see also Streeter v. Dominguez*, No. CV 11-

1616-PHX-PGR, 2012 WL 254205, at *2 (D. Ariz. Jan. 27, 2012) ("Federal courts have limited jurisdiction, and a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the claim.") (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)); *see also Ex parte Siebold*, 100 U.S. 371, 377 (1880) ("[I]f the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes."); *United States. v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]").

## B.  The Supreme Court's Holding in *AAPC*.

In January, the Supreme Court granted *certiorari* in *AAPC*, framing the issues as "[1] [w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and [2] whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute."  Question Presented Report, *AAPC*, No. 19-631, https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00631qp.pdf (last visited November 3, 2020).  The Supreme Court did not grant certiorari to consider whether the statute was enforceable pre-severance; nor did the parties ever brief that issue.  *Id*.  Indeed, since *AAPC* was a direct challenge to the automated-call ban brought by parties who wanted to make calls *prospectively*, there was no underlying litigation and, thus, no occasion for the Supreme Court to decide the impact of the decision on TCPA cases like this one, where a plaintiff is trying to enforce the automated-call ban as to past conduct.  *See id*.

On July 6, 2020, the Supreme Court decided *AAPC*.[2]  The Court's Opinion was a deeply fractured plurality, but a majority of Justices still agreed that the automated-call

---

[2] On May 29, 2020, the Court stayed this case pending a decision in *AAPC*, noting that *AAPC* "grapple[d] with not only issues concerning the TCPA's government debt exception—not at issue here—but also the constitutionality of the TCPA's general underlying automated-call restriction."  Doc. 23 at 2.

-4-

ban, upon which Plaintiff's ATDS claim is entirely based, was an unconstitutional content-based restriction when combined with the government debt exception.  *AAPC*, 140 S. Ct. 2346 ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based.  The answer is yes.").  Specifically, the automated-call ban combined with the government debt exception "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment."  *See id.* at 2344.  Because the restriction was content based, it was subject to strict scrutiny, which it failed to pass.[3]  *Id.*  Six justices agreed with this conclusion.  *Id.*  Rather than scrapping the entire statute, however, the Supreme Court opted to save the automated-call ban by severing the government debt exception, though only three Justices (Kavanaugh, Roberts, and Alito) joined in the plurality's rationale for doing so.  *Id.* at 2352–54.

## IV.    RELEVANT LAW

### A. *AAPC* Deprives the Court of Subject Matter Jurisdiction over Plaintiff's ATDS Claim, Which Is Premised on Calls Before July 6, 2020, Because the Violation of an Unconstitutional Law Is Not a Justiciable Question.

"'[A]n unconstitutional law is void, and is as no law.'"  *Montgomery*, 136 S. Ct. at 731 (quoting *Siebold*, 100 U.S. at 376).  A violation of such a law is "not merely erroneous, but is illegal and void, and . . . [bestows upon] the Circuit Court . . . no jurisdiction of the causes."  *Siebold*, 100 U.S. at 376-377; *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759-760 (1995) ("A court does not—in the nature of things it *can* not—give a 'remedy' for an unconstitutional statute, since an unconstitutional statute is not in itself a cognizable 'wrong.'") (emphasis in original and citing *Marbury*, 5 U.S. at 178) (Scalia, J.

---

[3] Notably, strict scrutiny is the same standard the Supreme Court would apply to viewpoint discrimination, meaning the analysis and result in *AAPC* would have been the same if the exception had favored a particular political party, race, or ethnic group.  *See AAPC*, 140 S. Ct. at 2347 ("[T]he robocall restriction with the government-debt exception is content-based. Under the Court's precedents, a law that is content based is subject to strict scrutiny." (internal quotations omitted)).

concurring); *McClure v. Middletown Hosp. Ass'n*, 603 F. Supp. 1365, 1368 (S.D. Ohio 1985) ("We accept the proposition that unconstitutional statutes are generally void ab initio[.]").

Here, Plaintiff's lawsuit is entirely based on alleged violations of the automated-call ban prior to July 6, 2020, at a time during which the Supreme Court in *AAPC* determined this ban was unconstitutional (and prior to the Supreme Court's "cure" of the constitutional infirmity through severance of the government debt exception). *See* Doc. 13 at ¶¶ 12, 16–17 (alleged communications occurred in August and October 2019). Additionally, the vast majority of the communications to the alleged class pre-date *AAPC*. Doc. 1 at ¶ 20, Doc. 13 at ¶ 24 (defining class to date back to January 2016). Therefore, because ARM could not have violated a statutory provision that contained an unconstitutional content-based restriction and this Court cannot provide a remedy for a violation of an unconstitutional statute, there is no justiciable federal question as to any alleged violations that occurred pre-*AAPC*.

The necessity of this result is illustrated by *Creasy* and *Lindenbaum*—the only two cases to have considered this issue.[4]  *See Creasy*, 2020 WL 5761117, at *8; *Lindenbaum*, 2020 WL 6361915 *7. In both cases, Judge Martin L.C. Feldman (*Creasy*) and Chief Judge Patricia A. Gaughan (*Lindenbaum*) considered identical subject matter jurisdiction challenges to a plaintiff's TCPA class action lawsuit, which were premised on communications that were sent prior to the Supreme Court's decision in *AAPC*.[5]  *Creasy*, 2020 WL 5761117 *1-2; *Lindenbaum*, 2020 WL 6361915 *1-2. As to *Creasy*, in his well-reasoned analysis, Judge Feldman concluded that imposing liability for speech that allegedly violates an unconstitutional statute is irreconcilable with Supreme Court First

---

[4] Undersigned counsel was also lead counsel in *Creasy* and *Lindenbaum*.

[5] The court in *Creasy* did not dismiss the claims based on communications that were sent after *AAPC*. *See Creasy*, 2020 WL 5761117, *6–7. Instead, Judge Feldman stayed the remaining claims pending the Supreme Court's forthcoming decision regarding what constitutes an ATDS in *Facebook, Inc. v. Duguid*, No. 19-511. *Id.* at *8.

-6-

Amendment precedent and fundamental due-process and equal protection principles. *Creasy*, 2020 WL 5761117 at \*3 (principle of *void ab initio* "colors many doctrines, but as relevant here, it suggests that—in the vast run of scenarios—a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion") (citing *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972)).  As such, although *AAPC* remedied the automated-call ban by severing the government debt exception, Judge Feldman explained, "the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) [was] void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*."  *Id*. at \*5 (emphasis in original).  Judge Feldman therefore held that federal courts are deprived of subject matter jurisdiction to adjudicate liability for calls placed during the time the unconstitutional version of § 227(b)(1)(A)(iii) was in place (2015 to July 6, 2020).  *Id*. at \*6.  In so holding, Judge Feldman noted that this was the "constitutionally dictated result."  *Id*.

Chief Judge Gaughan reached the identical conclusion in *Lindenbaum*, dismissing the case and holding that "severance of the government-debt exception applies only prospectively."  *Lindenbaum*, 2020 WL 6361915 \*3.  Judge Gaughan also clarified why that *must* be the result for constitutional violations involving content-based discrimination. *Id.* \*7 ("The insertion of the government-debt exception transformed this valid time, place, and manner restriction [the automated-call ban] into an unconstitutional content-based restriction.").  She specifically explained that cases involving constitutionally impermissible content-based discrimination differ from those where "Congress adds an exception, the *entirety* of which results solely in unequal treatment, to an otherwise valid statute."  *Id.* (emphasis added).  In such cases, the only way to uphold "equal treatment" under the First Amendment is treat the favored (*i.e.*, government speakers) and disfavored (*i.e.*, non-government speakers) equally with respect to *pre*-severance violations.  *Id.*  To do otherwise would perpetuate the same content-based discrimination the Supreme Court expressly recognized and tried to cure prospectively in *AAPC*.  Judge Gaughan therefore

dismissed the plaintiff's case for lack of subject matter jurisdiction, noting, "the fact remains that at the time defendant[] engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction.  The Court cannot wave a magic wand and make that constitutional violation disappear."  *Id.*

Judge Feldman's and Judge Gaughan's decisions comport with traditional tenets of constitutional law and binding Supreme Court precedent.  For example, in *Grayned*, the Supreme Court noted, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted."  408 U.S. at 107 n.2.  In other words, the relevant inquiry is whether the offending statute was constitutional at the time the violation occurred, not whether it has subsequently been cured by judicial or legislative action.  Thus, as confirmed by *Creasy* and *Lindenbaum*, in this case, the automated-call ban must be assessed at the time ARM allegedly committed the violations, which, according to the allegations of the Plaintiff's operative Complaint, was before July 6, 2020 (Doc. 13 at ¶¶ 12, 16), at a time when the ban was unconstitutional.  *See id.*; *Creasy*, 2020 WL 5761117, at *6; *Lindenbaum*, 2020 WL 6361915 *7; *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (noting in a majority opinion that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity").

Similarly, in *Montgomery*, the Supreme Court addressed whether a new constitutional ruling from 2012 interpreting the Eighth Amendment to ban mandatory life sentences for juvenile homicide offenders must be applied retroactively to a juvenile who had been sentenced to life without parole in 1963.  *See* 136 S. Ct. at 723.  The Supreme Court concluded the answer is yes: a "penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional.  There is no grandfather clause that permits States to enforce punishments the Constitution forbids.  To conclude otherwise would undercut the Constitution's

-8-

substantive guarantees." *Id*. at 730 (citing *U.S. v. U.S. Coin and Currency*, 401 U.S. 715, 724 (1971) ("'No circumstances call more for the invocation of a rule of complete retroactivity' than when "'the conduct being penalized is constitutionally immune from punishment.'"")); *see also Waldron v. United States*, 146 F.2d 145, 147-148 (1944) (vacating judgment against criminal defendant based on violation of unconstitutional statute, explaining "inspection of the record discloses clearly that the court was without jurisdiction to enter the judgment").

Judge Feldman's decision in *Creasy* and Judge Gaughan's decision in *Lindenbaum*, as well as the Supreme Court precedent identified above (on which Judge Feldman and Judge Gaughan largely relied) unanimously recognize the fundamental unfairness of imposing penalties for violations of a statutory provision that was concededly unconstitutional—and thus "void"—when the alleged violations occurred. They also make obvious, intuitive sense. If the rule were otherwise, the political party in power could pass similar unconstitutional exceptions to favor its own preferred speech, knowing it could only be penalized on a prospective basis once a challenge reached the Supreme Court. To put this example in starker terms, if a Republican Congress added an exception to the TCPA permitting Republican campaigns to make calls that were prohibited for everyone else and the Supreme Court severed that exception, litigants could not (and would not) legitimately argue that a Democratic Political Action Committee could be penalized for violating the pre-severance statute but that a Republican campaign could *only* be penalized post-severance. This would be an untenable result—and it is not the law. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994) (explaining that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place"); *Baucum*, 80 F.3d at 540-41 ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]"); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (reversing fine because election law violated First Amendment);

*Bates v. State Bar of Arizona*, 433 U.S. 350, 384 (1977) (reversing attorney discipline because bar rule violated First Amendment); *The Florida Star v. B.J.F.*, 491 U.S. 524, 5321 (1989) (reversing damages award because "imposing damages" for constitutionally protected speech "violates the First Amendment"); *New York Times v. Sullivan*, 376 U.S. 254, 292 (1964) (reversing judgment awarding damages because state libel law violated the First Amendment).

It follows here that ARM cannot be penalized in ongoing litigation for making calls pre-severance, in violation of an unconstitutional provision, when government-favored speakers were excused. Indeed, such a result—as recognized in *Creasy* and *Lindenbaum*—would vitiate the majority holding of *AAPC* (that the automated-call ban combined with the exception is unconstitutional), perpetuating "the unequal treatment" afforded to government-favored speakers that *AAPC* deemed constitutionally impermissible. *See AAPC*, 140 S. Ct. at 2354.

**B. The Three-Justice Dicta in Footnote 12 of the *AAPC* Decision Does Not Warrant a Different Result.**

Speaking for a three-Justice plurality, Justice Kavanaugh states in footnote 12:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. [citation omitted]. *On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.*

*AAPC*, 140 S. Ct. at 2355, n.12 (emphasis added). Though the footnote is admittedly vague, it does not change the conclusion that the Court lacks subject matter jurisdiction over Plaintiff's ATDS claim, involving communications that pre-date *AAPC*.

1   This is true for several reasons.  *First*, the footnote consists of pure obiter dicta,[6]

2   because it "is unnecessary to the decision in the case" and thus should be afforded little

3   weight, particularly because it was only the opinion of three justices.  *See Lindenbaum*,

4   2020 WL 6361915 *3 ("The Court agrees with defendant that *AAPC* did not address

5   whether severance of the government-debt exception applies retroactively to cases

6   currently pending. In addition, footnote 12 is contained in a plura[l]ity opinion endorsed

7   by only three Justices. Therefore, the Court finds that footnote 12 constitutes non-binding

8   *obit[e]r dictum*"); *Creasy*, 2020 WL 5761117, at *5 n.4 (noting the "footnote is merely

9   persuasive, as opposed to mandatory, because it appears in an opinion commanding the

10   votes of only three justices, and because  . . . it constitutes mere 'obiter dictum'").[7]  Thus,

11   it was correctly characterized by Justices Thomas and Gorsuch (both of whom criticized

12   this dicta) as only a non-binding "suggestion."  *AAPC*, 140 S. Ct. at 2363.  For that reason,

13   it does not change the binding effect of the *holding* of the case, adopted by a *majority* of

14   Justices: that the automated-call ban combined with the government-debt exception was

15   unconstitutional pre-severance (*i.e.*, going back to 2015 when the debt exception was

16   enacted).  *See id.* at 2343 ("Six Members of the Court today conclude that Congress has

17   impermissibly favored debt-collection speech over political and other speech, in violation

18   _____

19   [6] *Black's Law Dictionary* defines obiter ("something said in passing") dictum as a

20   "comment made during the course of delivering a judicial opinion, but one that is
    unnecessary to the decision in the case and therefore not *precedential* (though it may be
    considered persuasive).  879 (7th ed. 2000) (emphasis added).  Chief Justice Marshall

21   characterized it in *Cohens v. Virginia*, 19 U.S. 264, 399, 5 L. Ed. 257 (1821) as dicta that
    "may be respected, but ought not to control the judgment in a subsequent suit when the

22   very point is presented for decision."  *See also Paddock Publications, Inc. v. Chicgao
    Tribune Co.*, 103 F.3d 42, 46 (7th Cir. 1996) (recognizing that inferior courts are not bound

23   by obiter dictum).

24   [7] "[W]hen the Justices fail to converge on a single majority rationale for a decision,

25   the only precedent that comes of such a decision is the position adopted by the narrowest

26   concurrence . . . the plurality in *AAPC* spelled out the technical holdings of the Court in
    explicit terms: (1) Six members of the Court … conclude that Congress has impermissibly

27   favored debt-collection speech over political and other speech, in violation of the First
    Amendment[.]"  *Creasy*, 2020 WL 5761117, at *4 (internal quotations omitted).

-11-

of the First Amendment.").[8]  And the result of *AAPC*'s binding holding is, as explained above, that the automated-call ban cannot be enforced against ARM in this case based on over 200 years of prior Supreme Court precedent, particularly in the First Amendment context.  *See supra* IV.A.

*Second*, though the footnote is admittedly ambiguous, based on the circumstances, statements in the footnote itself, and prior Supreme Court precedent, it is most reasonably interpreted as referring to only past *judgments*.  In other words, the plurality did not mean *AAPC* to negate or undo liability against parties that has already been *adjudicated*.[9]  This is consistent with prior Supreme Court precedent that recognizes "a distinction between the application of a change in the law that takes place while a case is on direct review on the one hand, and its effect on a final judgment under collateral attack, on the other hand." *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 710-711 (1974); *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993) (law of the case doctrine permits "a court to revisit an issue if an intervening change in the law, or some other special circumstance, warrants reexamining the claim"); *Chen v. Holder*, 578 F.3d 515, 517 (7th Cir. 2009) (recognizing "in both civil and criminal litigation . . . 'a change in law will be given effect while a case in on direct review'") (quoting *United States v. Johnson*, 457 U.S. 537, 543 (1982)).  This is also the only way to read the footnote consistent with *Seila Law*, in which the same three Justices who joined the plurality in *AAPC*—and just one week before *AAPC* decision—cast doubt on the viability of actions taken by the Consumer Financial Protection Bureau (the "CFPB") during the time its leadership structure was unconstitutional.  *See*

---

[8] Put another way, the holding of the case is binding precedent, and the footnote is not.  *See AAPC*, 2020 WL 3633780, at *22 (shielding "only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination [the Supreme Court says it is] seeking to eliminate") (Gorsuch, J. concurring).

[9] *Black's Law Dictionary* defines liability as the "quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment . . . ."  739 (7th ed. 2000).  Thus, liability implies a preexisting determination (*e.g.*, from a court of law) to hold a party responsible.

-12-

1   *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2208-09 (2020), discussed in detail *infra*, in

2   Section IV.C.

3        In short, coupled with the Supreme Court's long-standing precedent, its recent

4   decision in *Seila Law*, and the fact the parties did not even brief the issue, the last sentence

5   of the plurality's footnote 12 cannot reasonably be interpreted to allow courts in ongoing

6   cases to penalize defendants under a statute that was unconstitutional at the time of the

7   alleged conduct.  Indeed, the Supreme Court is "a court of review, not of first view," and

8   it "ordinarily will not decide questions not raised or litigated in the lower courts," certainly

9   not in one sentence without any analysis, and certainly not when doing so would require

10  overruling precedent.  *See McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1170 (2017)

11  (quotations omitted); *see also City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 259

12  (1987).

13  **C.  The Supreme Court's Recent Opinion in *Seila Law* Supports Dismissal.**

14       As noted above, the Supreme Court decided *Seila Law* a week before *AAPC*, and

15  *Seila Law* strongly supports that the automated-call ban cannot be enforced against ARM

16  in this case.  140 S. Ct. at 2208-09.  In *Seila Law*, a three-justice plurality comprised of

17  Justices Roberts, Alito, and Kavanaugh (the same plurality as the severance portion of the

18  *AAPC* decision) recognized the long-standing principle that unconstitutional laws are

19  unenforceable during the time they are unconstitutional, even if later cured prospectively

20  through severance.  *See id.*  A majority of the Justices further concluded that the CFPB's

21  leadership structure, consisting of a single director removable only for cause, was

22  unconstitutional because it violates the separation of powers.  *Id.* at 2204.  To cure this

23  constitutional infirmity, the three-justice plurality (Roberts, Alito, and Kavanaugh), in Part

24  IV of the opinion, opted to sever the director's removal protection from the President.  *Id.*

25  at 2207-08.

26       In so holding, this plurality acknowledged that actions taken under the CFPB's

27  constitutionally infirm leadership structure (such as investigations, litigation, and even

28

-13-

promulgation of regulations) may require dismissal/invalidation—*unless* subsequent ratification has occurred. *See id.* at 2208 ("The parties dispute whether this alleged ratification in fact occurred and whether, if so, it is legally sufficient to cure the constitutional defect in the original demand . . . . A remand for the lower Courts to consider those questions in the first instance is therefore the appropriate course[.]"). Thus, the Supreme Court remanded to the lower court to determine "the lingering ratification issue." *Id.* In further evidence of the seriousness of the problem created by the Court's holding that the CFPB's leadership structure was unconstitutional for a period of time, the CFPB thereafter took action (the day after the *Seila Law* decision) to formally ratify actions taken from January 4, 2012, through June 30, 2020 in order to ensure they are not attacked on grounds of being void. *See CFPB Ratifies Prior Regulatory Actions*, CFPB, https://www. consumerfinance.gov/about-us/newsroom/cfpb-ratifies-prior-regulatory-actions/ (last visited Oct. 21, 2020).

If the constitutionality of the statute posed no problems to the viability of acts taken by the CFPB while its structure was unconstitutional, then there would have been no need for the lower courts to determine the extent to which ratification occurred and no need for the CFPB to ratify its own prior acts. Put another way, by remanding the ratification issue to the lower court, the Supreme Court (including the ***same*** three justices who severed the debt exemption in *AAPC*) recognized that, absent ratification, the acts taken by the CFPB may be deemed void unless they were ratified on a *prospective* basis.

The logic underlying the Supreme Court's application of the severance doctrine in *Seila Law* applies with equal force to the automated-call ban. Put differently, the Supreme Court's severance of the government debt exception cured the ban's infirmity on a prospective basis. But it did not (and could not) cure the infirmity with respect to calls made during the time the law was unconstitutional—at the time it impermissibly favored one group of speakers over another.

Further, the constitutional defect in *AAPC* was far more severe than in *Seila Law*,

-14-

where the defect was procedural, thereby allowing the new CFPB leadership to ratify prior acts committed by the CFPB's then-unconstitutional leadership with no harm to the affected parties.  In contrast, the nature of the constitutional defect in the TCPA was *substantive*, favoring one group of speakers over another with the disfavored speakers potentially on the hook for ruinous liability—hundreds of billions of dollars in statutory penalties that are akin to criminal penalties[10]—while the favored speakers were entirely absolved.  Unlike the procedural defect in *Seila Law*, this substantive defect cannot be cured through ratification.  Accordingly, consistent with the Court's logic in *Seila Law*, the Court cannot impose liability against ARM for allegedly violating the automated-call ban during the time it was constitutionally infirm.  *See also Grayned*, 408 U.S. at 107; *Morales-Santana*, 137 S. Ct. at 1699; *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767 n. 2 (Mem) (D.C. Cir. 2020) (denial of petition for en banc review) ("judicial severance of one portion of an unconstitutional statute is, by necessity, only applicable prospectively") (O'Malley, J concurring).

## V.    CONCLUSION

*AAPC* held that the TCPA's automated-call ban was an unconstitutional content-based restriction when combined with the government debt exception that was enacted in 2015 and in place until the Supreme Court severed it on July 6, 2020.  140 S. Ct. at 2347. If this ban were enforceable during that period of time, when it was unconstitutional, that would mean that ARM and all other speakers who purportedly made calls during that period of time are potentially liable for billions of dollars in liability while government-favored speakers making the same calls are entirely absolved.  This untenable outcome is directly at odds with long-standing First Amendment principles and the Supreme Court's rulings in *AAPC*, *Seila Law*, and other binding precedent.  Accordingly, and as the only two courts to address the issue have correctly held, this Court lacks subject matter

---

[10] *See, e.g.*, *McMillion, et al. v. Rash Curtis & Assoc.*, No. 4:16-CV-03396 (N.D. Cal. May 4, 2020) (judgment awarding class damages for TCPA violations in amount of $267,349,000).

jurisdiction to adjudicate Plaintiff's claims (or any claims by putative class members) that occurred during the time the ban was unconstitutional and must dismiss Plaintiff's lawsuit. *See Marbury*, 5 U.S. at 180.

Dated:  November 3, 2020                          KABAT CHAPMAN & OZMER LLP

By: /s/ *Ryan D. Watstein*

Ryan D. Watstein

*Counsel for Defendant*

-16-

**LOCAL RULE 12.1(c) CERTIFICATE OF COMPLIANCE**

I certify that I conferred in good faith with Plaintiff's counsel about the jurisdictional issues asserted in the instant Motion and the parties were unable to agree that the operative Complaint was curable in any part by a permissible amendment.

**CERTIFICATE OF SERVICE**

I certify that today I filed Defendant All Reverse Mortgage, Inc.'s **Motion for Judgment on the Pleadings and Memorandum of Points and Authorities in Support** with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record in this action:

Penny K. Koepke
Maxwell & Morgan, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
(480) 833-1001
pkoepke@holaw.biz

Patrick H. Peluso
Taylor T. Smith
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
(720) 213-0675
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

DATED: November 3, 2020.          */s/ Ryan D. Watstein*

                                  Ryan D. Watstein


                                  *Counsel for Defendant*

-17-