Penny L. Koepke
pkoepke@hoalaw.biz
Maxwell & Morgan, P.C.
4584 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Telephone (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Classes*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Brenda Whittaker, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>All Reverse Mortgage, Inc., a California corporation,<br><br>Defendant. | Case No. 3:20-cv-08016-DLR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hon. Douglas L. Rayes<br><br>Complaint Filed: January 16, 2020<br>FAC Filed: March 3, 2020 |

1

## I.      INTRODUCTION

2      Seeking to avoid this lawsuit challenging its serial violations of the Telephone

3    Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA" or the "Act"), Defendant All

4    Reverse Mortgage, Inc. ("ARM" or "Defendant") moves this Court for judgment on the

5    pleadings. To hear ARM tell it, the Supreme Court's recent decision in *Barr v. American*

6    *Association of Political Consultants, Inc*. ("*AAPC*"), 140 S. Ct. 2335, 2343, 207 L. Ed. 2d

7    784 (2020), nullified the entirety of the TCPA from the time the Act was amended in 2015

8    (the "2015 Amendment") until the date of judgment in *AAPC* on remand—thereby

9    depriving this Court of subject matter jurisdiction.

10      ARM's reasoning falls apart. That is, ARM turns *AAPC* on its head, overlooks the

11    express language of the *AAPC* Opinion as to severability, and insists that the TCPA

12    simply was without force between 2015 and the date judgment was entered in *AAPC*.  In

13    reality, far from declare the last 5 years of the TCPA unconstitutional, *AAPC* did just the

14    opposite.

15      While ARM's lawyers have convinced two district courts to agree,[1] this Court

16    should refuse to be the third. The decisions in *Creasy* and *Lindenbaum* ignore over 100

17    years of Supreme Court precedent, cited favorably in *AAPC*, that holds unconstitutional

18    amendments are a nullity and are "powerless to work any change to existing statutes."

19    Likewise, ARM gives short shrift to the actual language of *AAPC* and its judgment with

20    respect to severability—which was endorsed by seven of the justices—all while placing

21    undue weight on *Seila Law LLC v. CFPB*, a recent severability decision that doesn't

22    actually support its extreme reading of the law. Finally, and as Justice Kavanaugh

23    explains, it cannot be disputed that "[T]he people's representatives have made crystal

24    clear that robocalls must be restricted." *AAPC*, 140 S. Ct. at 2356. ARM's approach, as

25

26    [1] *See Creasy v. Charter Comms., Inc*., --- F.3d ---, No. 2:20-CV-01199, 2020 WL 5761117
       (E.D. La. Sept. 28, 2020) ("*Creasy*") and *Lindenbaum v. Reagly, LLC*, No. 1:19-CV-

27    2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) ("*Lindenbaum*").

28

1    endorsed by *Creasy* and *Lindenbaum,* seeks to override legislative intent and

2    impermissibly rewrite the TCPA out of existence.

3        In short, and as explained further below, *Creasy* and *Lindenbaum* were incorrectly

4    decided, and the Court should refuse to grant judgment on the pleadings.

5    **II.    BACKGROUND**

6        Before explaining the legal infirmities that undermine ARM's argument, a brief

7    review of the TCPA and the arguments that brought us here is helpful.

8    ***The TCPA, in Effect Since 1991, was Amended in 2015***

9        In 1991, "[v]oluminous consumer complaints about abuses of telephone

10   technology—for example, computerized calls dispatched to private homes—prompted

11   Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71, 132

12   S. Ct. 740, 744, 181 L. Ed. 2d 881 (2012) ("Congress determined that federal legislation

13   was needed because telemarketers, by operating interstate, were escaping state-law

14   prohibitions on intrusive nuisance calls."); *see also Marks v. Crunch San Diego, LLC*, 904

15   F.3d 1041, 1043 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289, 203 L. Ed. 2d 300

16   (2019) (explaining that "[t]elemarketing sales had 'skyrocketed to over $435 million in

17   1990,' which was a 'fourfold increase since 1984.'") (citing 137 Cong. Rec. S16,971

18   (daily ed. June 27, 1991) (statement of Rep. Pressler)).

19       Despite the law's enactment and steady enforcement over the past several decades,

20   incessant telemarketing continues to this day. As explained by the Court in *AAPC,* "[t]he

21   Federal Government receives a staggering number of complaints about robocalls—3.7

22   million complaints in 2019 alone. The States likewise field a constant barrage of

23   complaints. For nearly 30 years, the people's representatives in Congress have been

24   fighting back…[t]he Telephone Consumer Protection Act of 1991, known as the TCPA,

25   generally prohibits robocalls to cell phones and home phones." 140 S. Ct. at 2343.

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
-2-

1    ***TCPA Defendants challenged the constitutionality of the government-debt exception***

2          Despite the generally longstanding prohibition on robocalls, in 2015 Congress

3    amended the TCPA as part of the Bipartisan Budget Act to "allow robocalls that are made

4    to collect debts owed to or guaranteed by the Federal Government, including robocalls

5    made to collect many student loan and mortgage debts." *Id*. In response, TCPA defendants

6    began mounting legal challenges, claiming that the 2015 Amendment violated the First

7    Amendment to the Constitution by favoring certain speech. For a remedy, they asked

8    these courts to declare the entire Act unconstitutional.

9          In response, multiple courts *partly* agreed and found that the government debt

10   collection violated the First Amendment. At the same time, these courts also found that

11   the exception, having been added in 2015, is severable in light of the TCPA's severability

12   clause and does nothing to negate liability under the otherwise valid robocall prohibitions

13   while it was supposedly in effect. *See, e.g., Taylor v. KC VIN, LLC*, No. 4:19-CV-00110-

14   NKL, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019) ("Given the general

15   presumption in favor of severability, the apparent Congressional intent that the

16   unconstitutional provision be severed, and the TCPA's demonstrated ability to be fully

17   operative without the severed provision, the Court finds the government-debt exception is

18   severable. Other courts have found the same.") (citing *Perrong v. Liberty Power Corp.*,

19   411 F. Supp. 3d 258, 268 (D. Del. 2019) ("There is no evidence that Congress would not

20   have enacted the TCPA without the exception for government debt."); *Wilson v. PH*

21   *Phase One Operations L.P.*, No. CV DKC 18-3285, 2019 WL 4735483 (D. Md. Sept. 27,

22   2019); *Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 4645524 (D.

23   Mass. Sept. 24, 2019)).

24   ***The Supreme Court in AAPC severed the government debt collection exception but
     upheld the remainder of the TCPA***

25

26         The issue eventually reached the Supreme Court in *AAPC*. Examining the nature of

     the 2015 Amendment, the plurality Opinion explained that:

27

28

1
2
3

> In short, the robocall restriction with the government-debt exception is content-based. Under the Court's precedents, a "law that is content based" is "subject to strict scrutiny." *Reed*, 576 U.S., at 165, 135 S.Ct. 2218. The Government concedes that it cannot satisfy strict scrutiny to justify the government-debt exception. We agree.

4   *AAPC*, 140 S. Ct. at 2347. "Having concluded that the 2015 government-debt exception

5   created an unconstitutional exception to the 1991 robocall restriction," the *AAPC* Court's

6   analysis turned to "whether to invalidate the entire 1991 robocall restriction, or instead to

7   invalidate and sever the 2015 government-debt exception." *Id.* at 2348. Expressly

8   rejecting AAPC's assertion that the entire 1991 robocall restriction was unconstitutional,

9   the Court addressed whether the 2015 Amendment could be severed from the rest of the

10  statute, ultimately concluding that "the text of the Communications Act's severability

11  clause requires that the Court sever the 2015 government-debt exception from the

12  remainder of the statute." *Id.* at 2353–54.[2]

13          This didn't end the analysis, however. Explaining that, "[t]his is an equal-treatment

14  case, and equal-treatment cases can sometimes pose complicated severability questions,"

15  Justice Kavanaugh's opinion additionally addressed the appropriate remedy, namely

16  whether to "extend benefits or burdens, rather than nullifying the benefits or burdens." *Id.*

17  at 2354. Observing that "[t]he government-debt exception is a relatively narrow exception

18  to the broad robocall restriction, and severing the government-debt exception does not

19  raise any other constitutional problems," Justice Kavanaugh concluded his opinion with

20  the following holding:

21
22
23
24

> [A]s we have explained, severing the 2015 government-debt exception cures the unequal treatment and constitutes the proper result under the Court's traditional severability principles. ***In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction***.

*Id.* at 2355 (emphasis added).

25

26
27

---

[2] The Court additionally explained that the 2015 Amendment would've been severable under a presumption of severability. *AAPC*, No. 19-631, 18.

28

1     Ignoring this language entirely, ARM claims that *AAPC* decision actually requires

2 the opposite conclusion. As explained below, this Court should deny its Motion for

3 Judgment on the Pleadings.

4 **III.    ARGUMENT**

5     ARM ignores binding Supreme Court precedent that holds unconstitutional

6 amendments are powerless to change existing statutes and fails to accord sufficient weight

7 to Justice Kavanaugh's specific ruling that the robocall prohibition remained in effect.

8 Likewise, ARM's reliance on *Seila Law* is misplaced, and the Court should reject its

9 invitation to rewrite the TCPA in a way Congress plainly never intended.

10          **A.    ARM ignores over 100 years of Supreme Court precedent, cited**
                   **favorably in *AAPC*, that holds unconstitutional amendments are a**
11                 **nullity and, therefore, powerless to work any change to existing statutes.**

12     The first problem for ARM is that "an unconstitutional statutory amendment 'is a

13 nullity' and 'void' when enacted, and for that reason has no effect on the original statute."

14 *AAPC*, 140 S. Ct. at 2353 (*citing Frost v. Corp. Comm'n*, 278 U.S. 515, 527, 49 S. Ct.

15 235, 239, 73 L. Ed. 483 (1929); *Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60 (1803)). Put

16 simply, unconstitutional amendments have no impact on the original statute. As the

17 Supreme Court explained in *Frost*:

18          Here it is conceded that the statute, before the amendment, was entirely valid.
19          When passed, it expressed the will of the Legislature which enacted it.
            Without an express repeal, a different Legislature undertook to create an
20          exception, but, since that body sought to express its will by an amendment
            which, being unconstitutional, is a nullity and, therefore, powerless to work
21          any change in the existing statute, that statute must stand as the only valid
22          expression of the legislative intent.

23 *Frost*, 278 U.S. 515, 526–27 (explaining further that "no law can be changed or repealed

24 by a subsequent act which is void because unconstitutional. An act which violates the

25 Constitution has no power and can, of course, neither build up nor tear down. It can

26 neither create new rights nor destroy existing ones. It is an empty legislative declaration

27

28

1    without force or vitality.") (citing *In Carr, Auditor, v. State ex rel. Coetlosquet*, 127 Ind.

2    204, 215, 26 N. E. 778, 781 (11 L. R. A. 370, 22 Am. St. Rep. 624)); *see also Eberle v.*

3    *People of State of Michigan*, 232 U.S. 700, 705, 34 S. Ct. 464, 465, 58 L. Ed. 803 (1914)

4    ("[I]n the case at bar the original local option law of 1889 had been held to be

5    constitutional as a whole, and its validity could not be impaired by the subsequent

6    adoption of what were in form amendments, but, in legal effect, were mere nullities.").[3]

7            ARM's Motion for Judgment on the Pleadings makes no mention of *Frost* or

8    *Eberle*, nor of *AAPC's* favorable treatment of both cases. The silence speaks volumes.

9    ARM has no persuasive answer to this authority because it plainly holds that an

10   unconstitutional amendment, like the TCPA's government debt-collection provision added

11   to the statute in 2015, "is an empty legislative declaration without force or vitality." Had

12   the TCPA not existed as a constitutional law prior to the amendment, ARM's position

13   might carry more weight[4]; however, it is undisputed that the TCPA was constitutional

14   prior to the addition of the government debt collection exception and that the amendment,

15   added years later, is unconstitutional. As such, the 2015 amendment was "powerless to

16   work any change in the existing [TCPA, and] that statute must stand as the only valid

17   expression of the legislative intent." *Frost*, 278 U.S. 515, 526–27.

18           Though Judge Feldman's decision in *Creasy* similarly makes no mention of either

19   *Frost* or *Eberle*, Judge Gaughan admittedly attempted to distinguish *Eberle* in

20   *Lindenbaum*. This Court should reject her analysis. First, the *Lindenbaum* decision failed

21   to address *Frost*, which is even more on point than *Eberle* and plainly held that "no law

22
23   [3] These authorities most closely adhere to the Supreme Court's approach to severability
     more generally, which emphasizes judicial modesty. *See Free Enter. Fund v. Pub. Co.*
24   *Accounting Oversight Bd.*, 561 U.S. 477, 508, 130 S. Ct. 3138, 3161, 177 L. Ed. 2d 706
     (2010) (explaining that "when confronting a constitutional flaw in a statute, we try to limit
25   the solution to the problem," severing any "problematic portions while leaving the
     remainder intact.") (citing *Ayotte v. Planned Parenthood of Northern New Eng.,* 546 U.S.
26   320, 328–329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006)).
     [4] *See* Section III.C., *infra* (citing *Frost*, 278 U.S. at 525).
27
28

1  can be changed or repealed by a subsequent act which is void because unconstitutional."

2  278 U.S. at 527 (internal citations omitted).

3      Second, *Lindenbaum* pointed out that in *Eberle*, a state Supreme Court had found

4  the statute was initially constitutional, while in *AAPC* the U.S. Supreme Court determined

5  constitutionality. This is a distinction without a difference: the inquiry is whether a statute

6  that was previously constitutional had an amendment tacked on later that is

7  unconstitutional but ultimately severed. It shouldn't matter whether the Court that

8  determined constitutionality in the first instance was State or Federal nor did this impact

9  the *AAPC* decision.

10      Third, Judge Gaughan incorrectly rejected the notion that an unconstitutional

11  amendment is void *ab initio*. *Lindenbaum*, No. 1:19 CV 2862, 2020 WL 6361915, at \*7

12  (N.D. Ohio Oct. 29, 2020). In doing so she ignored Justice Kavanaugh's explanation that

13  "an unconstitutional statutory amendment 'is a nullity' and 'void' ***when enacted***, and for

14  that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (emphasis

15  added). Judge Gaughan responds that the amendment couldn't actually be void *ab initio*

16  because Footnote 12, discussed in greater detail in the next section, specified that the

17  decision reached as to severability wouldn't be used to penalize those who made

18  government-debt collection calls during the time the amendment was operative on the

19  (mistaken) belief that the exception comported with the Constitution. If the amendment

20  was never operative at all, then per Judge Gaughan's reasoning there would be no basis

21  for treating it as having been operative with respect to anyone during the period before it

22  was declared unconstitutional.

23      While Judge Gaughan raises an interesting question as to whether Justice

24  Kavanaugh's Footnote 12 should have gone so far as to shield government debt collectors

25  who relied on the facial validity of the exception for the calls they made (together with

26  potential doubts about the enforceability of this provision), the existence of this language

27

28

1  in the Footnote, which Judge Gaughan otherwise considers "orbiter dicta", shouldn't be

2  used to negate over 100 years of jurisprudence holding firmly that unconstitutional

3  amendments are a nullity when enacted and are powerless to impact otherwise pre-

4  existing constitutional statutes.[5]

5       In sum, *Eberle* and *Frost*, as recognized expressly in *AAPC*, are good law, and an

6  amendment that is added to an otherwise pre-existing constitutional law that is later

7  severed on grounds that it is unconstitutional does *not* act to poison the entirety of the

8  statute during the time the amendment was in effect. Rather, absent an express repeal of

9  the law, the statute as it existed pre-amendment "must stand as the only valid expression

10 of the legislative intent." Because ARM's position undeniably contradicts such intent, this

11 Court should refuse to adopt it.

12 **B.    Try as it may, ARM cannot delete Justice Kavanaugh's judgment as to
             severability, of which Footnote 12 is part, and which unambiguously
13           contradicts ARM and the opinions reached in *Creasy* and *Lindenbaum*.**

14       Relatedly, ARM takes great pains to discount Footnote 12 of Justice Kavanaugh's

15 plurality opinion, which states:

16       As the Government acknowledges, although our decision means the end of
         the government-debt exception, no one should be penalized or held liable for
17       making robocalls to collect government debt after the effective date of the
         2015 government-debt exception and before the entry of final judgment by
18       the District Court on remand in this case, or such date that the lower courts
         determine is appropriate. See Reply Brief 24. ***On the other side of the ledger,***
19       ***our decision today does not negate the liability of parties who made***
         ***robocalls covered by the robocall restriction***.
20

21
22 *AAPC*, 140 S. Ct. at 2355 n.12 (emphasis added). Despite the plain language used in the

23 footnote, ARM claims the wording "ambiguous" and, echoing *Creasy*, calls this footnote

24 "pure obiter dicta" that "is unnecessary to the decision in the case." (Def. Mot. 11.)

25 _____

26 [5] As explained in the next section, this is particularly the case where, as here, the supposed
    orbital dicta simply echoes the Court's holding as to severability, which expressly stated
27  that the robocall prohibition shall remain in effect.

28

1     ARM's argument is an act of attempted misdirection. While the footnote may not

2   be the Court's holding as to severability, Justice Kavanaugh's severability judgment set

3   forth in Section III—which was joined by 7 of the Justices (the entire Court except for

4   Justices Gorsuch and Thomas)—actually concludes with the following holding: "***In short,***

5   ***the correct result in this case is to sever the 2015 government-debt exception and leave***

6   ***in place the longstanding robocall restriction***." *AAPC*, 140 S. Ct. at 2355 (emphasis

7   added). It is <u>this holding</u> to which Footnote 12 is appended, and it makes emphatically

8   clear that with respect to severability, the Court's judgment is that the amendment was

9   severed and the "longstanding robocall restriction" remained in place. *Id.* at 2355. By

10  focusing instead on the Footnote 12 and proceeding as if the only holding in the opinion

11  adopted by a majority of the Justices was that the "automated-call ban combined with the

12  government-debt exception was unconstitutional pre-severance," (Def. Mot. 12) ARM

13  impermissibly writes the express language of the severability holding out of the opinion.

14  There is no basis for doing so other than to shield ARM from liability, and the Court

15  should reject ARM's attempted redraft.

16      Moreover, Footnote 7 of the *AAPC* Opinion addressed the issue of "invalidat[ing]

17  more than just the offending provision". The Court stated:

18      If courts had broad license to invalidate more than just the offending
        provision, a reviewing court would have to consider what other provisions to
19      invalidate: the whole section, the chapter, the statute, the public law, or
        something else altogether. Courts would be largely at sea in making that
20      determination, and usually could not do it in a principled way. Here, for
        example, would a court invalidate all or part of the Bipartisan Budget Act of
21      2015 rather than all or part of the 1991 TCPA? After all, that 2015 Bipartisan
        Budget Act, not the 1991 TCPA, added the constitutionally problematic
22      government-debt exception. That is the kind of free-wheeling policy question
        that the Court's presumption of severability avoids.
23

24  *AAPC*, 140 S. Ct. at 2351, n.7. Thus, following ARM's argument to its logical end would

25  result in the entire Bipartisan Budget Act of 2015 being invalidated. The Court should

26  decline to reach such a conclusion.

27

28

1    Adopting ARM's position would also elevate Justice Gorsuch's dissent, in which

2    only Justice Thomas joined, above the majority's severability judgment. ARM fails to

3    provide any rationale for this. Justice Gorsuch, in *dicta* of his own, described the

4    majority's severability judgment as a "suggestion," but that doesn't negate its legal effect.

5    Section III's judgment as to severability states clearly that "the correct result in this case is

6    to sever the 2015 government-debt exception ***and leave in place the longstanding***

7    ***robocall restriction***," *Id.* at 2355 (emphasis added), before ever reaching the footnote—

8    which essentially repeated the holding for emphasis.

9    Further, and as explained above, characterizing Footnote 12 as dicta would work to

10   potentially harm those callers who, unlike ARM, in good faith made "robocalls to collect

11   government debt after the effective date of the 2015 government-debt exception and

12   before the entry of final judgment by the District Court on remand in *AAPC*." Footnote 12

13   serves to protect from liability those callers who, relying on the apparently facial validity

14   of the government-debt exception, weren't actually excepted from the TCPA. Discounting

15   Footnote 12 as "pure obiter dicta" would have the likely impact of exposing these callers

16   to potential liability.

17   Finally, ARM claims that Footnote 12, at most, only applies to past *judgments*

18   reached during period of time the government-debt collection exception was supposedly

19   in force. (Def. Mot. 12-13.) The Court should refuse this attempted re-write as well: as

20   much as it is improper to delete language from the decision that ARM finds unfavorable, it

21   is equally improvident to insert language that simply isn't there. Indeed, nowhere does

22   Footnote 12, or Section III's severability judgment, ever purport to "leave in place" only

23   judgments that were reached during the pre-severance period.

24   ARM's discussion of Footnote 12 continues to turn the actual decision reached in

25   *AAPC* on its head: ARM asks this Court to strike "the correct result in this case is to sever

26   the 2015 government-debt exception and leave in place the longstanding robocall

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
-10-

restriction" from the judgment as to severability while at the same time it tries to read language limiting the holding (as repeated in Footnote 12) solely to past judgments into the decision that simply isn't there. While ARM's same lawyers may have convinced two out-of-circuit district courts to reimagine *AAPC* in this way, this Court should not be so similarly persuaded.

**C.      The Supreme Court's decision in *Seila Law* in no way supports ARM's argument.**

ARM also maintains that the Supreme Court's decision in *Seila Law*, *LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2193, 207 L. Ed. 2d 494 (2020), which was issued this past June, supports its position that the entire TCPA from 2015 until now was rendered a nullity by *AAPC*. Fortunately for consumers harmed by ARM's telemarketing, *Seila Law* does no such thing.

First, *Seila Law* doesn't address the situation present in *Eberle*, *Frost*, *AAPC* and, by extension, the instant matter: the impact of an unconstitutional amendment that was added to an otherwise constitutional law once the amendment has been severed. *Seila Law* challenged the make-up of the Consumer Financial Protection Bureau ("CFPB"), specifically restrictions placed on the President's ability to remove the Bureau's single director under The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 124 Stat. 1376. *Seila Law* concluded that such restrictions violated the Constitution's separation of powers. Critically, however, at no point does the decision address the impact of *any* amendments to Dodd-Frank—the restrictions on the President's ability to remove the CFPB's Director were included in the original act. *See, e.g., Frost*, 278 U.S. at 525 (explaining that "If section 3714 as originally passed had contained the proviso, the effect would be to render the entire section invalid…. But the proviso here in question was not in the original section. It was added by way of amendment many years after the original section was enacted."). As such, the key question in this matter— whether an unconstitutional amendment to the TCPA rendered the entire Act

1   unconstitutional during the period in which the Amendment was in effect (from enactment

2   prior to judgment severing it in *AAPC*)—simply wasn't implicated or addressed in *Seila*

3   *Law* in any way. As such, *Seila Law* is inapposite.

4          Second, even if the Court were to consider *Seila Law* on point (it shouldn't) in

5   remanding the case for further consideration, *Seila Law* focused on Congressional intent.

6   That is, *Seila Law* required remand to address the Government's position that the demand

7   for documents served on Seila Law, LLC remained enforceable (despite having been

8   issued by a Director who had been granted unconstitutional authority) due to the

9   "ratification" of the demand by an Acting Director. As the *Seila Law* court explained:

> As the defendant in this action, petitioner seeks a straightforward remedy. It
> asks us to deny the Government's petition to enforce the civil investigative
> demand and dismiss the case. The Government counters that the demand,
> though initially issued by a Director unconstitutionally insulated from
> removal, can still be enforced on remand because it has since been ratified
> by an Acting Director accountable to the President. The parties dispute
> whether this alleged ratification in fact occurred and whether, if so, it is
> legally sufficient to cure the constitutional defect in the original demand.
> That debate turns on case-specific factual and legal questions not addressed
> below and not briefed here. A remand for the lower Courts to consider those
> questions in the first instance is therefore the appropriate course—unless
> such a remand would be futile.

18   140 S. Ct. at 2208. In determining whether remand would be futile, the *Seila* Court

19   focused on whether the directorship provision was severable which, in turn, hinged "on

20   the critical question [of] whether Congress would have preferred a dependent CFPB to *no*

21   *agency at all.*" *Id*. at 2183 (emphasis in original) ("That is the only question we have the

22   authority to decide, and the answer seems clear…[w]e think it clear that Congress would

23   prefer that we use a scalpel rather than a bulldozer in curing the constitutional defect we

24   identify today."). Because the Court refused to conclude that Congress would've wanted

25   no CFPB at all, the majority severed the directorship provision and remanded for further

26   proceedings.

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
-12-

1    If the presence of the offending provision, in and of itself, had been sufficient to

2  render the entire CFPB unconstitutional—as ARM would have this Court believe—then

3  there would have been no need for remand. *Seila Law* reached the opposite conclusion.

4  Moreover, and continuing the trend of judicial restraint exercised in *Seila Law*, Justice

5  Kavanaugh in *AAPC* explained that the preference wasn't to throw out the entire statute

6  but simply to sever the remaining provisions.

7    And of course, the case for honoring Congressional intent and refusing to negate an

8  otherwise constitutional enactment has even greater force where, as here, the offensive

9  provision was present in an *amendment* which was later severed. Again, unlike the

10 directorship provision that was present in Dodd-Frank from the get-go, the government

11 debt collection assessment was added as an amendment to the TCPA—an act that had

12 been otherwise constitutional for decades and can stand independently as the truest

13 expression of legislative intent.

14    As a final point here, Justice Kavanaugh repeatedly cited *Seila Law* favorably in

15 *AAPC* and never once intimated that it rendered the entire TCPA void during the pre-

16 severance life of the 2015 Amendments. Nor did Justice Gorsuch make such a claim in the

17 dissent. This Court should refuse to reach conclusions endorsed by none of the Justices.

18    In short, *Seila Law* doesn't actually offer ARM much support.

19   **D.    There is no question that Congress intended the robocall restriction to
          remain valid.**
20

21    Lastly, and as Justice Kavanaugh explained in the Court's judgment as to

22 severability, that "[T]he people's representatives have made crystal clear that robocalls

   must be restricted." *AAPC*, 140 S. Ct. at 2356. ARM understandably desires the opposite:
23

24 it broke the law and wants a proverbial "get out of jail free" card. But that would require

25 upending the entirety of the TCPA for the last 5 years—an Act that has independently

26 stood as Constitutionally firm since 1991—a conclusion no lawyer or jurist could credibly

27 claim reflects the intent of Congress. While Justice Kavanaugh explained that debt-

28

1   collectors who had made calls on behalf of the government pursuant to unconstitutional

2   exception couldn't be held liable for calls during that period of time, the robocall

3   restriction plainly stands.

4        Of course, ARM didn't rely on the exception for government debt collectors—it

5   made telemarketing calls and texts that have been unlawful for decades. This Court should

6   refuse to excuse such violations based upon two district court decisions that disregard the

7   intent of Congress and overlook a century of American jurisprudence.

8   **IV.    CONCLUSION**

9        ARM's arguments fail. ARM fails to cite long-standing precedent that holds

10   unconstitutional amendments are legal nullities that are powerless to impact pre-existing

11   constitutional enactments. ARM also ignores the actual language of Justice Kavanaugh's

12   judgment with respect to severability, which a total of 7 justices signed onto, concluding

13   that "the correct result in this case is to sever the 2015 government-debt exception and

14   leave in place the longstanding robocall restriction." Instead, ARM places undue weight

15   on *Seila Law*, a case that, by emphasizing judicial restraint, actually supports Plaintiff's

16   position. Ultimately, ARM's argument flatly contradicts Congressional intent, which no

17   one could credibly argue supports a finding that the entire TCPA was ineffective for the

18   last 5 years. While ARM would certainly benefit from such a liability shield, there is

19   simply no legal justification for crafting one.

20        WHEREFORE, Plaintiff respectfully requests that the Court deny ARM's Motion

21   for Judgment on the Pleadings and for such additional relief as the Court deems necessary,

22   reasonable, and just.

23

24                                  Respectfully Submitted,

25                                  **BRENDA WHITTAKER**, individually and on

26                                  behalf of all others similarly situated,

27

28

1

Dated: November 17, 2020          By:    /s/ Patrick H. Peluso
                                          One of Plaintiff's Attorneys

2

3          Penny L. Koepke
           pkoepke@hoalaw.biz

4          Maxwell & Morgan, P.C.
           4584 E. Baseline Road, Suite 104

5          Mesa, Arizona 85206
           Telephone (480) 833-1001

6

7          Patrick H. Peluso*
           ppeluso@woodrowpeluso.com

8          Taylor T. Smith*
           tsmith@woodrowpeluso.com

9          Woodrow & Peluso, LLC

10         3900 East Mexico Avenue, Suite 300
           Denver, Colorado 80210

11         Telephone: (720) 213-0676
           Facsimile: (303) 927-0809

12         *Pro Hac Vice

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies that a true and correct copy of the above titled

3   document was served upon counsel of record by filing such papers via the Court's ECF

4   system on November 17, 2020.

5                                                        /s/ Patrick H. Peluso

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

28                                                      -16-