Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Matthew A. Keilson (*pro hac vice*)
mkeilson@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
171 17th Street, Suite 1550
Atlanta, Georgia 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

*Counsel for Defendant*
*All Reverse Mortgage, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**(Prescott Division)**

| | |
|---|---|
| Brenda Whittaker, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>All Reverse Mortgage, Inc.,<br><br>Defendant. | Case No: 3:20-cv-08016-DLR<br><br>**DEFENDANT ALL REVERSE MORTGAGE, INC.'S EXPEDITED MOTION TO STAY PROCEEDINGS PENDING RULINGS ON WHETHER THE COURT HAS SUBJECT MATTER JURISDICTION AND IN *FACEBOOK*, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[*TIME SENSITIVE RELIEF REQUESTED*]**<br><br>Hon. Douglas L. Rayes<br><br>Complaint filed: January 16, 2020<br>FAC filed: March 3, 2020 |

**DEFENDANT'S EXPEDITED MOTION TO STAY**

Defendant All Reverse Mortgage, Inc. ("ARM") hereby moves the Court for an expedited Order staying this action until both of the following occur: (1) the Court determines whether it has subject matter jurisdiction, which ARM challenges in its pending Motion for Judgment on the Pleadings (Doc. No. 37; Doc. No. 42), and (2) and the United States Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511 (Jan. 9, 2020), which will resolve a central issue in this litigation: whether the definition of automatic telephone dialing system ("ATDS") in the Telephone Consumer Protection Act ("TCPA") encompasses any device that can "store" and "automatically dial numbers," even if the device does not "us[e] a random or sequential number generator." *See* 47 U.S.C. § 227(a)(1)(A). If the Court determines it lacks subject matter jurisdiction, like the majority of district court decisions to directly analyze the question posed to date, or if the Supreme Court answers the foregoing question in the negative, this case will be over because the system at issue does not "us[e] a random or sequential number generator," as discovery has already established. *Id.* Expedited relief is warranted because, unless the case is stayed immediately, Plaintiff will burden ARM and third parties in the midst of a pandemic with unnecessary discovery, given that this case is likely to be disposed of on pure questions of law.

This Motion is based upon the Memorandum of Points and Authorities attached hereto, the complete file and record in this action, and such further and other matters as the Court may allow.

KABAT CHAPMAN & OZMER LLP

DATED: December 18, 2020

By: /s/ *Ryan D. Watstein*
Ryan D. Watstein

*Attorney for Defendant*
*ALL REVERSE MORTGAGE, INC.*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................ 2

A. Proceedings Should Be Stayed Until the Court Determines Whether It Has Subject Matter Jurisdiction. ........................................ 2

B. Proceedings Should Be Stayed Until the Supreme Court Decides *Facebook*. ........................................ 5

III. CONCLUSION ........................................ 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Two questions of law may dispose of this case in the near future and render burdensome discovery on ARM and third parties entirely unnecessary. Until those questions of law are answered, the Court should stay further proceedings.

*First*, the Court should stay proceedings until it determines whether it has subject matter jurisdiction in light of *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (hereinafter, "*AAPC*"). The Court previously stayed proceedings pending *AAPC* because it could "dispose of this lawsuit." Doc. 23 at 2. *AAPC* does in fact dispose of the case. *AAPC* established that the TCPA's automated-call ban was unconstitutional at the time of the calls alleged here—as explained in ARM's pending motion for judgment on the pleadings—and that subject matter jurisdiction does not exist over claims based on an unconstitutional, content-based speech restriction. *See generally* Doc. 37. "[S]ubject-matter jurisdiction" is also the "first" issue "a court is called on to consider," *Can v. United States*, 14 F.3d 160, 162 n.1 (2nd Cir. 1994), because it is a limitation on the "court's *power* to hear a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (emphasis added). Accordingly, the case should not proceed unless and until the Court determines that it has the power to hear it. That is particularly true given that the majority of district courts that have squarely addressed the question have held (including in two decisions selected for publication to the federal supplement) that they lack subject matter jurisdiction over TCPA claims in identical circumstances.

*Second*, the Court should stay proceedings until the Supreme Court decides *Facebook, Inc. v. Duguid*, No. 19-511 (Jan. 9, 2020). That case will answer a dispositive issue of law critical to this case: "whether the definition of ATDS in the TCPA encompasses" the communications platform at issue here. *See id.* The Court previously indicated that it would consider a stay once discovery "determine[d] whether" a ruling on "the ATDS definition" in *Facebook* could dispose of the case. Doc. No. 26 at 2. That discovery has now occurred, and it confirmed that *Facebook* is likely to be decisive.

The Court should consider this motion and stay further proceedings on an expedited basis. Unless the case is stayed immediately, Plaintiff's burdensome discovery requests will prejudice ARM. Plaintiff has already served class discovery on ARM, seeking many years' worth of data about nearly all communications ARM has ever sent to current and prior customers. And that discovery is only the beginning, as Plaintiff will seek additional class data and deposition testimony. The absence of a stay will also burden third parties. For example, Plaintiff has already served a subpoena on ARM's telecom vendor, CallTrackingMetrics ("CTM"), and intends to serve further subpoenas on any underlying telecom providers.

All of this discovery will end up being unnecessary, both because the Court lacks subject matter jurisdiction and because the Supreme Court's decision in *Facebook* is likely to dispose of this case on a question of law. Subjecting the parties, third parties, and the Court to such needless burden and expense is the "worst possible outcome," as this Court has stated in staying proceedings in another case. *See In re Sprouts*, No. MDL 16-02731-PHX DLR, 2017 WL 3051243, at *2 (D. Ariz. May 24, 2017) (Rayes, J.).

ARM therefore respectfully requests the Court stay proceedings immediately.

## II. ARGUMENT

Proceedings should be stayed until two conditions are met: (1) the Court determines whether it has subject matter jurisdiction after *AAPC* (if it does not, the case will be over); and (2) the Supreme Court decides *Facebook*, which is likely to end this case on a pure issue of law.

### A. Proceedings Should Be Stayed Until the Court Determines Whether It Has Subject Matter Jurisdiction.

The Court should stay proceedings until it determines the impact of *AAPC* on this case—namely, whether it deprives the Court of subject matter jurisdiction and the power to even hear this case—as the Court originally contemplated.

The Court previously stayed this case pending the Supreme Court's decision in *AAPC* because it "might dispose of this lawsuit." Doc. 23 at 2. As the Court predicted, *AAPC* does

in fact end this case. *AAPC* established that the TCPA's restriction on autodialed calls was an unconstitutional content-based restriction under the First Amendment when the alleged calls in this matter took place (before July 6, 2020), and that this Court does not have subject matter jurisdiction to impose liability under an unconstitutional, content-based speech restriction (as explained in ARM's motion for judgment on the pleadings). *See generally* Doc. 37; *see also Streeter v. Dominguez*, No. 2:11-CV-01616, 2012 WL 254205, at *2 (D. Ariz. Jan. 27, 2012) (explaining that "a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the claim"). The only three courts to have squarely[1] considered the issue to date have agreed, dismissing similar TCPA claims for lack of subject matter jurisdiction in opinions selected for publication in the Federal Supplement. *See Lindenbaum v. Realgy*, --- F. Supp. 3d ----, No. 1:19 CV 2862, 2020 WL 6361915, at *5-7 (N.D. Ohio Oct. 29, 2020) (Gaughan, C.J.); *Creasy v. Charter Communications, Inc.*, --- F.Supp.3d ---, No. 2:20-CV-01199, 2020 WL

[1] Three other courts denied similar motions to dismiss, but ***none*** of them engaged the merits of the jurisdictional issue at hand. *First*, the court in *Advantage Chrysler-Dodge-Jeep, Inc.*—in a two-page order—dismissed that case on technical grounds that simply do not apply to the pending motion for judgment on the pleadings. *See* No. 6:20-cv-00182-WWB-EJK (M.D.Fla. Dec. 14, 2020) (dismissing motion ***to dismiss*** because it was filed after an answer, not on the merits; also failing to recognize that subject matter is a defense that cannot be waived and can be raised at any time, even on appeal). *Second*, the court in *Abramson v. Federal Insurance Company* dismissed a similar jurisdictional motion, but it was deeply flawed. *See* No. 8:19-cv-02524, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020). As ARM explained in its motion for leave, *Abramson* not only failed to articulate any independent reasoning for its decision; it relied on the purported reasoning of other courts that ***never even addressed*** whether *AAPC* deprives the federal courts of subject matter jurisdiction. *See* Doc. 46-1 at 4-5. *Third*, the court in *Shen v. Tricolor Auto Group LLC* was legally flawed and wrongly decided, as ARM explained in its other motion for leave (Doc. 50). *See* No. 2:20-cv-07419-PA-AGR (C.D. Cal. Dec. 17, 2020). Indeed, *Shen* relied, just like *Abramson* (which it cites), on several cases that do not even address the relevant jurisdictional question raised in *Shen* or by ARM. *Shen* then reasoned that only the government debt exception was unconstitutional, not the exception, but that is demonstrably wrong because it ignores: (a) the plain language of *AAPC*, which expressly ruled the "the robocall restriction ***with*** the government-debt exception" was unconstitutional (*See* 140 S. Ct. at 2347 (emphasis added)); and (b) the plain language of the First Amendment, which bars only laws "***abridging*** the freedom of speech" (the restriction), not laws ***permitting*** speech (the exception).

5761117 (E.D. La. Sept. 28, 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., et al.*, 5:20-cv-00038-JSM-PR, 2020 WL 7346536, at *1 (M.D. Fla. Dec. 11, 2020). This Court, however, has not yet decided the impact of *AAPC* on this case, despite ordering a stay specifically for that decision.

A stay is especially appropriate because the Court does not have subject matter jurisdiction in light of *AAPC*. The "question whether a court has subject-matter jurisdiction is, conventionally and properly, the *first* question a court is called on to consider." *Can*, 14 F.3d at 162 n.1 (emphasis added). District courts in this circuit routinely grant motions to stay when a "potentially dispositive" motion "raises the court's subject matter jurisdiction" and "will be decided purely on issues of law"—precisely the circumstances, here. *See, e.g.*, *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011) (granting motion to stay); *see also Beard v. Caesars Entm't Corp.*, No. 2:16–cv–00833, 2016 WL 9558932, at *1 (D. Nev. Sept. 6, 2016) ("[T]he Court concludes that a stay of discovery while the motion to dismiss [for lack of subject matter jurisdiction] is pending will best accomplish the objectives of Rule 1, to secure the just, speedy, and inexpensive determination of this action.").

Policy considerations further support granting a stay. Subject matter jurisdiction "involves a court's *power* to hear a case." *Cotton*, 535 U.S. at 630 (emphasis added). This case should thus be stayed, and discovery should not continue, unless and until the Court determines if it has the "power to hear" this case in the first place. *See id.* Subject matter jurisdiction is also a dispositive "threshold" issue. *Tradebay, LLC*, 278 F.R.D. at 600. The Court therefore should not permit Plaintiff to continue seeking burdensome discovery from ARM—and third parties—where subject matter jurisdiction may render all discovery for naught. *See id.* at 608 (explaining that stay while challenge to subject matter jurisdiction was pending "will best accomplish the objectives of [Federal Rule of Civil Procedure] 1, to secure the just, speedy and inexpensive determination of this action").

### B. Proceedings Should Be Stayed Until the Supreme Court Decides *Facebook*.

In addition to staying the case pending a decision on subject matter jurisdiction, the Court should further stay proceedings until the Supreme Court decides *Facebook.*

The Supreme Court's decision in *Facebook* will resolve a critical, dispositive issue in this case: "whether the definition of ATDS in the TCPA encompasses" the platform allegedly used to place the texts and calls at issue here. *See id.*; *see also* Doc. 19 at 5 (noting Plaintiff's entire case turns on whether ARM used an ATDS). In particular, *Facebook* will answer whether an ATDS includes "any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *See Facebook,* No. 19-511; 47 U.S.C. § 227(a)(1)(A) (statutory definition of ATDS requiring "a random or sequential number generator").

Given *Facebook*'s potentially decisive impact, this Court previously indicated that it would consider staying the case once discovery "determine[d] whether" the Supreme Court's ruling on "the ATDS definition" in *Facebook* could preclude liability for the dialing "system[]" at issue. Doc. No. 26 at 2. That discovery has now occurred, and it confirmed that *Facebook* is likely to fully dispose of this case. CTM's Rule 30(b)(6) witness testified that ARM's communications platform (the "CTM Platform")—the only communications system at issue in this case—does *not* "us[e] a random or sequential number generator," as the plain text of the TCPA requires. *See* 47 U.S.C. § 227(a)(1)(A); *see also* Ex. A ("CTM Depo.") at 10-11 ("**Q**: . . . . Does the CTM platform have the ability to generate random telephone numbers? [ ] **A**. ***No. It's not part of Call Tracking Metrics capabilities***. [ ] **Q**: Does the CTM platform have the ability to generate sequential telephone numbers to call? ***No. CTM doesn't have the ability to generate phone numbers at all***.") (emphasis added).[2]

[2] "**Q.** So just in summary, the CTM platform does not have the capacity or the capability [to generate random or sequential telephone numbers]?

Instead, the CTM platform *only* obtains telephone numbers when: (1) "somebody contacts [CTM]"; or (2) CTM "uploaded[s] [a customer list] to Call Tracking Metrics." CTM Depo. at 11.[3] Hence, as Plaintiff has previously conceded, this case will end if the Supreme Court reverses the Ninth Circuit in *Facebook* and follows the Seventh and Eleventh Circuits to hold that an ATDS must employ a "random or sequential number generator." 47 U.S.C. § 227(a)(1)(A); Doc. No. 25 at 6 (conceding that *Facebook* could move the dialing system at issue "outside the scope of the ATDS restriction").[4]

And the likelihood the Supreme Court follows the Seventh and Eleventh Circuits has increased substantially since ARM last requested a brief stay for three main reasons: (1) the Department of Justice filed a brief endorsing the Seventh and Eleventh Circuits' plain text, statutory interpretation of ATDS; (2) the United States Senate recently appointed Justice Barrett to the Supreme Court, who authored the Seventh Circuit's opinion adopting the statutory definition of ATDS; and (3) at oral argument,[5] the Supreme Court indicated it was inclined to reject the Ninth Circuit's interpretation and follow the Seventh and Eleventh Circuits' interpretation of ATDS. *See generally* Br. for the United States as Resp't Supporting Pet'r, *Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 5439453 (Sept. 4, 2020);

---

> **A.** Correct. It's not inherent in the system itself. I mean just as much as you could type any phone number into your phone yourself you could do the same in CTM, but the user would need to do this."

CTM Depo. at 12.

[3] "**Q:** For example, it's similar to if someone calls my cellphone I know they called in? **A.** That's correct." CTM Depo. at 11.

[4] ARM also denies liability under the Ninth Circuit's interpretation of ATDS, but that question would be far easier resolved if the Supreme Court adopts the Seventh and Eleventh Circuits' interpretation because the calling devices at issue categorically lack the capacity to dial numbers randomly or sequentially. *Compare Marks v. Crunch San Diego*, LLC, 904 F.3d 1041, 1052 (9th Cir. 2018), *with Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020), and *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020).

[5] ARM waited to file the instant motion until after Oral Argument in *Facebook* and the Court's release of the official transcript for the same.

*Gadelhak*, 950 F.3d at 459 (Barrett, J.); Ex. B, Tr., *Facebook, Inc. v. Duguid*, No. 19-511 (Jan. 9, 2020) ("Tr."), at 9 ("I think you say in your brief, and it seems right to me, that if we take [Duguid's/Appellant's]--your opponent's definition, then it would be unlawful for a person to use a cell phone . . .") (Breyer, J.); *id.* at 53 ("And so you just --the most useful tool is kind of your --your first --first blush reading it in terms of how it makes sense. And I think most people's first blush would suggest that the -- [Facebook's] reading makes the most sense.") (Roberts, J.); *id.* at 63 ("Counsel, if we rule your way, the logical consequence is that every cell phone owner would be subject to the harsh criminal and civil penalties of the [T]CPA.") (Sotomayor, J.); *id.* at 66 ("So sort of setting aside the semantic arguments for the moment, do you -- do you agree that the grammar favors Facebook?) (Kagan, J.). This Court should therefore stay this case pending the Supreme Court's potentially dispositive ruling in *Facebook*.

All the relevant factors support staying the case, just as they did when the Court stayed the case pending *AAPC*. *See generally Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (discussing factors relevant to stay motion); *see also* Doc. No. 19 at 5-6 (ARM's previous stay motion discussing *Landis* factors). A stay does not pose a meaningful risk of harm to Plaintiff, who seeks statutory penalties—not damages—on behalf of herself and an uncertified class, and who has not received any messages ***for over a year***. *See In re Sprouts*, 2017 WL 3051243, at *1-2 (Rayes, J.) (holding that delay of "monetary recovery cannot serve as the foundation to deny a stay"); Doc 23 at 2 ("[A]ssertions of ongoing or future harm are too speculative and conclusory to be persuasive, especially since Plaintiff has not indicated that she has received allegedly violative communications from Defendant since October of 2019."). ARM, by contrast, will suffer hardship in the absence of a stay: it will be forced to invest substantial resources in litigating this case despite the probability that the Supreme Court will soon render that investment entirely unnecessary—the "worst possible outcome," in this Court's words. *See In re Sprouts*, 2017 WL 3051243, at *2; *see also* Doc. 23 at 2 ("without a stay, Defendant will be required to expend its limited resources litigating a costly class action that might be foreclosed.").

Judicial economy likewise strongly supports a stay, as it will protect the Court from expending significant resources on motions practice (potentially including motions for summary judgment and class certification) and discovery disputes in connection with a matter that may shortly be resolved on an issue of law after *Facebook*. *See* Doc. 23 at 2 (granting stay, explaining "considerations of judicial economy weigh in favor of a stay, which will enable the Court to preserve resources rather than expend them litigating issues that may be mooted shortly thereafter"). Finally, a stay furthers the interests of the public and non-parties. The public will benefit from a stay that prevents the potential unnecessary expenditure of judicial resources on this matter. A stay would also promote the public interest in the uniform administration of the law, as the Court will be able to proceed with the benefit of the Supreme Court's guidance on an issue of law critical to this case, instead of adding to the divided authority on the scope of ATDS liability. And a stay promotes the interests of non-parties, including cellular carries and purported class members, who will be spared the burden and expense of substantial third-party discovery during a pandemic that *Facebook* may render entirely needless.

Indeed, Courts routinely stay proceedings in precisely the circumstance here, where a higher court is close to settling an issue of law important to the case. *See* Doc. No. 19 at 5-7 (collecting cases). More than ten courts—***including the Ninth Circuit itself***—have already stayed TCPA proceedings for that very reason because of *Facebook*. *See, e.g.*, *Meier v. Allied Interstate, LLC*, No. 20-55286, Doc. 12 (9th Cir. Aug. 11, 2020) (staying case based on *Facebook*); *see also Ulery v. AT&T Mobility Servs., LLC*, No. 20-CV-02354, 2020 WL 7333835, at *2 (D. Colo. Dec. 12, 2020) ("Defendant has set forth a convincing argument that both parties would be unduly burdened by moving forward with discovery prior to the Supreme Court's resolution of the central question presented by *Facebook*, given that that same issue is 'critical' to the resolution of this case."); *Jensen v. Roto-Rooter Services Co.*, No. C20-0223, Doc. 27 (W. D. Wash. August 20, 2020) (same); *Bittner v. Subway Franchisee Advertising Fund Trust, Ltd.*, No. 3:20-cv-00522, Doc. 27 (D. Conn. Aug. 11, 2020) (same); *Boger v. Citrix Sys., Inc.*, No. 8:19-CV- 01234, Doc. 33 (D. Md. Aug. 4, 2020);

*Runyon v. Everquote, Inc.*, 1:20-cv-01206, Doc. 20 (D. Colo. July 23, 2020) (same); *Blower v. Portfolio Recovery Assoc.*, No. 3:19-cv-2270, Doc. 27 (S.D. Cal. July 23, 2020); *Beal v. Outfield Brew House, LLC*, No. 20-1961, Doc. Entry July 14, 2020 (8th Cir. July 14, 2020) (same); *Grome v. USAA Sav. Bank*, No. 4:19-cv-03080 (D. Neb. July 14, 2020) (same); *Hoffman v. Jelly Belly Candy Co.*, No. 2:19-CV-01935, Doc. 22 (E.D. Cal. July 17, 2020) (same); *Young v. Bank of Am. N.A.*, No. 4:19-CV-03867, Doc. 31 (N.D. Cal., July 15, 2020) (same); *May v. Whatsapp, Inc.*, No. 4:20-CV-659, Doc. 20 (N.D. Cal. July 15, 2020) (same); *Rossano v. Fashion Mktg. and Merch. Grp., Inc.*, No. 2:19-CV-10523, Doc. 31 (C.D. Cal. July 14, 2020) (same); *Sensibaugh v. EF Educ. First, Inc.*, No. 2:20-CV-01068, Doc. 30 (C.D. Cal. July 14, 2020) (same).

This Court should likewise stay proceedings here until *Facebook* is decided.

## III. CONCLUSION

For the foregoing reasons, the Court should decide this motion on an expedited basis. Proceedings should be stayed until both: (1) the Court determines whether it has subject matter jurisdiction; and (2) the Supreme Court decides *Facebook*.

Dated: December 18, 2020

KABAT CHAPMAN & OZMER LLP

By: /s/ *Ryan D. Watstein*
Ryan D. Watstein

*Attorney for Defendant*
*ALL REVERSE MORTGAGE, INC.*

**CERTIFICATE OF SERVICE**

I CERTIFY THAT TODAY I FILED **DEFENDANT ALL REVERSE MORTGAGE, INC.'S EXPEDITED MOTION TO STAY PROCEEDINGS PENDING RULINGS ON WHETHER THE COURT HAS SUBJECT MATTER JURISDICTION AND IN *FACEBOOK*, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** WITH THE CLERK OF COURT USING THE CM/ECF SYSTEM WHICH WILL SEND A NOTICE OF ELECTRONIC FILING TO THE FOLLOWING COUNSEL OF RECORD IN THIS ACTION:

Penny K. Koepke
Maxwell & Morgan, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
(480) 833-1001
pkoepke@holaw.biz

Patrick H. Peluso
Taylor T. Smith
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
(720) 213-0675
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

DATED: December 18, 2020

*/s/ Ryan D. Watstein*
Ryan D. Watstein

*Attorney for Defendant*
*ALL REVERSE MORTGAGE, INC.*